UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

PAWAN KUMAR SINGH,

Petitioner,

v.

CHRISTOPHER LAROSE, Warden Otay Mesa Detention Center, et al.,

Respondents.

Case No.:  26-CV-1425 JLS (GC)

**ORDER GRANTING AMENDED PETITION FOR WRIT OF HABEAS CORPUS**

(ECF No. 5)

Presently before the Court is Petitioner Pawan Kumar Singh's Amended Petition for Writ of Habeas Corpus ("Pet.," ECF No. 5).  Also before the Court is Respondents' Return in Opposition ("Ret.," ECF No. 8) and Petitioner's Traverse ("Traverse," ECF No. 9).  For the reasons set forth below, the Court **GRANTS** Petitioner's Amended Petition (ECF No. 5).

## BACKGROUND

Petitioner is a native and citizen of India who came to the United States on an H-1B visa in 2011 as a software engineer.  Pet. at 2.  Petitioner worked as a "functional analysis" for Starbucks and other companies.  *Id.*  Petitioner filed an I-140 Immigrant Petition for Alien Worker which will allow him to become a lawful permanent resident.  *Id.* at 2–3.  Petitioner has lived in Arizona with his family for fifteen years.  *Id.* at 3.  Petitioner owns

1

a home in Arizona where he lives with his wife and his twelve-year-old U.S. citizen daughter. *Id.* His son is currently enrolled in college in the United States. *Id.* Petitioner has no criminal history and has been a productive, working member of his community. *Id.*

In the fall of 2025, Petitioner went on a brief trip to Mexico to look at real estate. *Id.* While in Mexico, his wallet and passport were stolen. *Id.* Petitioner sought to obtain a replacement passport through the Indian consulate in Mexico but encountered repeated delays. *Id.* On November 5, 2025, Petitioner went to the U.S. port of entry with a photocopy of his passport and his H-1B visa that was listed as valid until December 8, 2025. *Id.* At the port of entry, the officers told him that his visa had been revoked in October 2025. *Id.* Petitioner was not aware of this but knew that his I-94 was still valid until December 5, 2025. *Id.* Petitioner also knew that, even if his visa had been revoked, he still had a sixty-day grace period to fix his status. *Id.* The officer did not believe Petitioner, detained him, and put him into expedited removal proceedings. *Id.* Petitioner has been detained at the Otay Mesa Detention Center for over five months now. *Id.*

In Petitioner's first habeas petition before the Court, *Singh v. Archambeault*, the Court found that Petitioner could not be subject to mandatory detention under 8 U.S.C. § 1225(b)(1) because Petitioner has "resided in the United States for fifteen years, has had continuous employment authorization, approved employment-based immigration petitions, and has substantial familial connections in Arizona." No. 25-CV-3720 JLS (DDL), ECF No. 8, at 6 (S.D. Cal. Jan. 26, 2026) (citing *Arias v. LaRose*, No. 25-CV-2595-BTM-MMP, 2025 WL 3295385, at *4 (S.D. Cal. Nov. 25, 2025)). The Court ordered a bond hearing under § 1226(a). *Id.*

Petitioner was given a bond hearing on February 2, 2026. Pet. at 4. The immigration judge ("IJ") denied Petitioner's bond on the basis that he was a flight risk. *Id.* The hearing lasted eighteen minutes, during which the IJ heavily discussed the Court's January 26, 2026, order requiring a bond hearing and the fact that Petitioner was subject to an expedited removal order. *Id.*, Ex. B. Petitioner's counsel emphasized the fact that the Court previously found § 1225(b) mandatory detention inapplicable to Petitioner due to his

longstanding lawful immigration status and that Petitioner owns a home in the United States, is in the middle of adjusting his status to lawful permanent resident, has lived in the United States without issue for fifteen years, has been gainfully employed, and has significant family ties to the United States, including a minor child. *Id.*, Ex. B at 3, 6. The IJ—without discussing any of these factors—found that Petitioner was "a significant flight risk . . . and . . . that there is no amount of bond . . . that would mitigate that risk." *Id.*, Ex. B at 7. The IJ stated that she was considering "the expedited removal order" and the fact that Petitioner willingly left the country to go to Mexico. *Id.* Petitioner now argues that his continued detention without a constitutionally adequate bond hearing violates the Due Process Clause of the Fifth Amendment. Pet. at 4.

## DISCUSSION

Petitioner argues that the February 2, 2026, bond hearing "was fundamentally unfair and violated the Due Process Clause of the Fifth Amendment." Pet. at 4. Petitioner emphasizes that, in the Court's Order on Petitioner's previous habeas petition, the Court concluded that Petitioner should not be denied bond "on the basis that 8 U.S.C. § 1225(b)(1) requires mandatory detention." *Id.* at 2 (quoting *Singh*, No. 25-CV-3720 JLS (DDL), ECF No. 8, at 6–7). Petitioner contends that in contradiction of the Court's prior Order and the Due Process Clause, the IJ denied bond "*solely* on the basis of [Petitioner's] expedited removal order" under § 1225(b)(1) and failed to consider any of Petitioner's individual circumstances or weigh any of the *Guerra* factors analyzing flight risk. *Id.* Respondents argue that Petitioner's arguments fail because he failed to exhaust his administrative remedies and the IJ properly applied the burden of proof for a § 1226(a) hearing. Ret. at 2–5. The Court agrees with Petitioner.

## I.    Jurisdiction

Respondents do not argue that the Court lacks jurisdiction. However, the Court will briefly address the issue of jurisdiction, as it has risen in similar cases in this Circuit. *See, e.g.*, *W.T.M. v. Bondi*, No. 25-CV-2428-RAJ-BAT, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026); *Miri v. Bondi*, No. 26-CV-698-MEMF-MAR, 2026 WL 622302, at *5–7

26-CV-1425 JLS (GC)

(C.D. Cal. March 5, 2026).  Following other courts in this District and Circuit, the Court concludes that it has jurisdiction to consider the "constitutionality and sufficiency of the process by which [Petitioner's] bond determination was adjudicated."  *Miri*, 2026 WL 622302, at *5; *see also Perez Velasquez v. Bondi*, No. 26-CV-1759-GPC-DDL, 2026 WL 1042479, at *2 (S.D. Cal. Apr. 16, 2026).

While "[i]n general, the Court does not have jurisdiction to review discretionary bond decisions," *Soriano v. Hernandez*, --- F. Supp. 3d ---, 2026 WL 969764, at * 3 (W.D. Wash. Apr. 10, 2026) (citing 8 U.S.C. § 1226(e)), the Court does have "habeas jurisdiction over constitutional claims or questions of law," *id.* (quoting *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017)).  8 U.S.C. § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."

This section, however, does not "deprive federal district courts from their habeas jurisdiction to review bond hearing determinations for constitutional claims and legal error."  *W.T.M.*, 2026 WL 262583, at *1 (citing *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022) ("Although the IJ's discretionary bond determination was not reviewable in federal court . . . we would have had jurisdiction under 28 U.S.C. § 2241 to consider any error of law in [Petitioner's] agency proceedings, including any claimed due process violation."); *Holder*, 638 F.3d at 1202 (quoting *Gutierrez-Chavez v. Immigr. & Naturalization Serv.*, 298 F.3d 824, 829 (9th Cir. 2002) ("[C]laims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'")).  This jurisdiction extends to "mixed questions involving the application of law to facts."  *N.A. v. Warden*, No. 25-CV-3007-CV-MBK, 2026 WL 734587, at *6 (C.D. Cal. Feb. 20, 2026), *report and recommendation adopted sub nom.*,

26-CV-1425 JLS (GC)

*N.A. v. Warden, Adelanto Det. Facility*, No. 25-CV-3007-CV-MBK, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026) (citing *Martinez v. Clark*, 124 F. 4th 775, 783 (9th Cir. 2024)).

Therefore, "[b]ecause Petitioner argues that the process he was provided at his § 1226(a) bond hearing was legally and constitutionally deficient, this Court retains jurisdiction to review Petitioner's claims." *Perez Velasquez*, 2026 WL 1042479, at *2; *see also W.T.M.*, 2026 WL 262583, at *1 (finding jurisdiction for a similar challenge); *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *3 (same); *Miri*, 2026 WL 622302, at *5 (same); *Gimenez v. Hernandez*, No. 26-CV-966-GJL, 2026 WL 1156075, at *4 (W.D. Wash. Apr. 29, 2026) (same); *Garcia v. Hyde*, 817 F. Supp. 3d 112, 124 (D.R.I. 2025) (same).

## II.   Exhaustion

Respondents argue that exhaustion is required before Petitioner can challenge his bond denial. Ret. at 2. The Court disagrees with Respondents and exercises its discretion to waive the prudential exhaustion requirement in this case.

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). While 28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by*, *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Prudential exhaustion may be required if: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2017) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).

"When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until

26-CV-1425 JLS (GC)

the petitioner has exhausted [their] remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). "[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

While in the past the Court has declined to waive the exhaustion requirement, the circumstances in this Petition warrant the Court to exercise its discretion and waive the requirement. *See Nagiyev v. Warden*, No. 25-CV-3744 JLS (MMP), 2026 WL 945965, at *2–3 (S.D. Cal. Apr. 7, 2026) (declining to waive the exhaustion requirement and finding no due process violation); *Fernandes v. Warden*, No. 25-CV-3813 JLS (MSB), 2026 WL 1005075, at *2–3 (S.D. Cal. Apr. 14, 2026) (same). Here, the Court need not determine whether the *Puga* factors way in favor of requiring exhaustion because the Court finds that there is significant risk of irreparable injury under the *Laing* factors justifying waiver.[1] *Perez Velasquez*, 2026 WL 1042479, at *3; *see also Puga*, 488 F.3d at 815; *Laing*, 370 F.3d at 1000.

Petitioner has shown that—and courts in this Circuit routinely find that—irreparable injury would result if he were required to wait for a BIA decision before pursuing habeas relief. *See, e.g.*, *Gimenez*, 2026 WL 1156075, at *4 (waiving exhaustion based on irreparable harm due to continued detention); *W.T.M.*, 2026 WL 262583, at *3 (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d. 1239, 1253–54 (W.D. Wash. 2025)) ("District courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals."); *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *4 ("[G]iven the lengthy delays inherent in the current appeals

---

[1] The Court also notes that other courts in this District have found that pursuit of administrative remedies would be futile because the "BIA has been drastically reshaped within the past year, such that the BIA now functions to rubberstamp IJ bond denials and facilitate noncitizen removal." *See Perez Velasquez*, 2026 WL 1042479, at *3 (collecting sources).

process, the Court finds Petitioner will suffer irreparable injury if he is required to wait for a BIA decision before being permitted to file a habeas claim."); *Perez Velasquez*, 2026 WL 1042479, at *4 ("Respondents fail to acknowledge that several courts—including those in this Circuit—have found that continued detention after a potentially legally inadequate hearing may constitute such irreparable harm.") (collecting cases); *Doroteo-Chavez v. Noem*, No. 26-CV-49-RFB-DJA, 2026 WL 1031190, at *6 (D. Nev. Apr. 16, 2026) (waiving exhaustion based on a potential continued prolonged detention awaiting an appeal).

Further, "Petitioner has presented evidence unique to him, that, while not an independent basis for relief, supports a finding that his continued detention pending a potentially months-long BIA appeal of the IJ's bond denial decision would risk continued irreparable harm." *W.T.M.*, 2026 WL 262583, at *3 (citations omitted). Relevant circumstances to this analysis include "economic burdens imposed on detainees and their families as a result of detention" as well as "the collateral harms to children of detainees whose parents are detained." *Hernandez*, 872 F.3d at 995. Petitioner has lived in the United States lawfully for fifteen years with steady employment pursuant to an H1-B visa. Pet. at 4. Petitioner is the primary provider for his family—his wife and minor U.S. citizen daughter—who live at the family's home in Arizona, which Petitioner owns. *Id.* Petitioner's arguments surrounding the irreparable harm to his family and minor child further justify waiving exhaustion in this case. *See Perez Velasquez*, 2026 WL 1042479, at *4–5 (waiving exhaustion based on evidence that the petitioner was the sole economic provider for young children); *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *4 ("Petitioner has dependents who rely on him financially and emotionally, and that relationship is severely negatively impacted by his continued detention."); *Gimenez*, 2026 WL 1156075, at *4 (waiving exhaustion due to the petitioner's two dependent children and ongoing custody proceedings).

Beyond this, Petitioner has suffered irreparable harm already through his detention and requiring him to continue to wait for relief would only serve to further this harm. For

26-CV-1425 JLS (GC)

example, Petitioner's visa had a sixty-day grace period in which to fix his status after its revocation. Pet. at 3. If Petitioner was not in detention, he could have corrected the very issue that led to his detention. Petitioner has lived lawfully in the U.S. for fifteen years pursuant to this visa and had a pending I-140 petition seeking lawful permanent residency. Requiring him to wait puts this status at an even greater risk than it already is.

Therefore, the Court, considering the unique circumstances in this case, waives the prudential exhaustion requirement.

## III.   Due Process Challenge

The Court now considers whether the bond hearing provided to Petitioner was legally and constitutionally adequate. The Court concludes it was not.

### A.     Legal Standard

"In light of *Martinez*,[2] courts may review an IJ's finding that an alien poses a flight risk for abuse of discretion." *Zaitsev v. Warden of Adelanto ICE Processing Ctr.*, No. 26-CV-454-SPG-AS, 2026 WL 391429, at *10 (C.D. Cal. Feb. 9, 2026) (collecting cases). "'[A]buse of discretion' review does not involve 'reweigh[ing] evidence' but rather determining whether the IJ 'applied the correct legal standard.'" *Loba L.M. v. Andrews*, No. 25-CV-611-JLT-SAB, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (quoting *Martinez*, 124 F.4th at 784). "Thus, 'the Court must decide whether the IJ relied upon proof that—as a matter of law—could not establish' the conclusion drawn." *Perez*

---

[2] In *Martinez*, the Ninth Circuit concluded that "the determination whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'" *Martinez*, 124 F.4th at 779 (collecting cases). The court reasoned that § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law." *Id.* (quoting *Holder*, 683 F.3d at 1202) (cleaned up). The court concluded that under *Wilkinson*, review of the "dangerousness" determination is for abuse of discretion. *Id.* at 779–80 (citing *Wilkinson v. Garland*, 601 U.S. 209, 225 (2024)). Courts in the Ninth Circuit have extended the reasoning of *Martinez* to the IJ's finding that an alien poses a risk of flight and thus have concluded it is subject to review for abuse of discretion. *See, e.g.*, *Zaitsev*, 2026 WL 391429, at *10; *Y.S.G. v. Andrews*, 25-CV-1884-SCR, 2025 WL 2979309, at *11 (E.D. Cal. Oct. 22, 2025); *Perez Velasquez*, 2026 WL 1042479, at *5; *Bayani v. LaRose*, No. 26-CV-266-JES-VET, 2026 WL 1270059, at *3 (S.D. Cal. May 8, 2026).

26-CV-1425 JLS (GC)

*Velasquez*, 2026 WL 1042479, at *5 (quoting *Kharis v. Sessions*, No. 18-CV-4800-JST, 2018 WL 5809432, at *5 (N.D. Cal. Nov. 6, 2018)) (cleaned up).  The IJ may consider the following factors in making discretionary bond determinations:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of other offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (first citing *Matter of Saelee*, 22 I&N Dec. 1258 (BIA 2000); then citing *Matter of Drysdale*, 20 I&N Dec. 815, 817 (BIA 1994); and then citing *Matter of Andrade*, 19 I&N Dec. 488 (BIA 1987)).  The Immigration Judge has "broad discretion" in weighing these factors, "as long as the decision is reasonable." *Id.*  "Though what constitutes flight risk is 'malleable and involves agency discretion,' it is 'still a legal standard so long as federal courts can assess whether an IJ correctly applied the statutory standard to a given set of facts.'"  *Perez Velasquez*, 2026 WL 1042479, at *5 (quoting *Martinez*, 124 F.4th at 783) (cleaned up).

### B.    Constitutional Sufficiency

The Court concludes that Petitioner's § 1226(a) bond hearing was legally and constitutionally insufficient because the IJ abused her discretion when she denied Petitioner bond based on flight risk.  The record demonstrates that the IJ only considered Petitioner's expedited removal order, Petitioner's voluntary trip to Mexico,[3] and the Court's previous

---

[3] Petitioner argues that his H1-B visa "gave him permission to travel outside the United States," thus his brief trip to Mexico was permitted.  Pet. at 8 n.1 (citing "FAQs for Individuals in H-1B Nonimmigrant Status," *available at*: https://www.uscis.gov/archive/faqs-for-individuals-in-h-1b-nonimmigrant-status). Respondents do not address this argument.  *See generally* Ret.

26-CV-1425 JLS (GC)

Order.  Pet. at 25, Ex. B.  The IJ did not consider the "significant evidence showing Petitioner is fixed and stable with his family in his community," *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *5, or the fact that Petitioner was allowed to go to Mexico on his H1-B visa and, if he were released, that he had sixty days to adjust his status after the revocation of his visa, Pet. at 25, Ex. B.  Rather the IJ stated, "So I am going to find that the [Petitioner], uh, is a significant flight risk, um, and that there's no amount of bond, uh, that would mitigate that risk.  Um, and the Court is considering, uh, the expedited removal order." *Id.*  The IJ also stated that she considered his pending I-140 and his H-1B visa, but concluded that because Petitioner went to Mexico voluntarily, Petitioner's "own actions are what resulted in him being in expedited removal proceedings." *Id.*

There is no evidence that the IJ considered the *Guerra* factors.  Specifically, there is no evidence that the IJ considered Petitioner's significant familial ties to the United States, his minor U.S. citizen daughter, his stable employment history, his Arizona home, his fifteen-year history in the United States without issue, his attendance at all court hearings and no attempts to escape prosecution, his lack of a criminal history, his eligibility for lawful permanent residency, and his lawful entry into the United States.  Pet. at 5.  "None of the *Guerra* factors—nor any of Petitioner's evidence relating to those factors—were mentioned by the IJ when making her flight risk determination at the hearing or in her order." *Perez Velasquez*, 2026 WL 1042479, at *6; *see also* Pet. at 25, Ex. B; Ret. at 7. *Cf. Zhou v. Trump*, No. 25-CV-3503-JLS-DEB, 2026 WL 937125, at *3 (S.D. Cal. Apr. 7, 2026) (denying a bond hearing challenge when the record indicated the IJ applied the *Guerra* factors).

The IJ's failure to consider the *Guerra* factors and reliance on evidence that "bear[s] little if any relevance" to Petitioner's risk of flight, "while seemingly ignoring all evidence in Petitioner's favor[,] constitutes a misapplication of the legal standard to the facts." *Perez Velasquez*, 2026 WL 1042479, at *6 (quoting *Matter of Patel*, 15 I. & N. Dec. 666, 666–67 (BIA 1976)).  The IJ, instead, "'relied upon proof that—as a matter of law—could not establish' that Petitioner was a flight risk." *Id.* (quoting *Kharis*, 2018 WL 5809432, at *5).

26-CV-1425 JLS (GC)

"Thus, the IJ's finding of flight risk 'was an error of law and the denial of bond was inappropriate.'" *Id.* (quoting *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008)).  While "[a]n IJ's failure to cite every piece of evidence in the record does not amount to clear error," *Larita-Martinez v. INS*, 220 F.3d 1092, 1096 (9th Cir. 2000), the IJ's "fail[ure] to mention highly probative . . . potentially dispositive evidence" weighs against an assumption that the IJ considered all the evidence, *Perez Velasquez*, 2026 WL 1042479, at *6 (quoting *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011)).  Here, the IJ doesn't state at the hearing that she considered all the evidence,[4] nor does she discuss any of the *Guerra* factors.  *See W.T.M.*, 2026 WL 262583, at *4 ("While a court may rely on an agency's statement that it considered all of the evidence before it, the parties in this case have provided no such declaration or other evidence to that effect." (citation omitted)).  Respondents do not argue that the IJ considered all the evidence and instead submit that the IJ applied the correct burden of proof under § 1226(a)—an argument not at issue in this case.[5]  Ret. at 4–5.

The Court, therefore, follows other courts in this Circuit in finding that the IJ abused her discretion in failing to consider highly probative evidence relating to risk of flight and failing to apply the *Guerra* factors.  *See, e.g.*, *Perez Velasquez*, 2026 WL 1042479, at *6–7 (finding abuse of discretion in a bond hearing *before the same IJ* for failure to apply the *Guerra* factors); *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *5–6 (finding an IJ abused his discretion in failing to consider "significant evidence showing [the petitioner was] fixed and stable with his family in his community"); *W.T.M.*, 2026 WL 262583, at *4 (finding that it was "clear from the existing record in this case that the IJ's bond denial was

---

[4] The IJ's written Order regarding the bond hearing states, "After full consideration of the evidence presented."  Ret. at 7.  The Court does not give this "vague assertion" any weight "as the record before the Court indicates that the IJ failed to mention highly probative evidence."  *Perez Velasquez*, 2026 WL 1042479, at *6.

[5] Under § 1226(a), Petitioner "bore the burden of showing by a preponderance of the evidence that he was not a danger to the community or a flight risk."  *Perez Velasquez*, 2026 WL 1042479, at *5 (citing *Rodriguez Diaz*, 53 F.4th at 1197).

26-CV-1425 JLS (GC)

constitutionally deficient, because there are no circumstances in which the IJ could plausibly establish that Petitioner posed a flight risk"); *Miri*, 2026 WL 622302, at *7–9 (finding a likelihood of success on the merits because the record did not establish that the IJ relied on the appropriate factors).

## IV.    Relief

"Federal courts have 'a fair amount of flexibility' in fashioning specific habeas relief." *Perez Velasquez*, 2026 WL 1042479, at *7 (quoting *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005)).  Having concluded that Petitioner's bond hearing was legally and constitutionally inadequate, the Court determines that there is "no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano*, --- F. Supp. 3d ---, 2026 WL 969764, at *6; *see also Perez Velasquez*, 2026 WL 1042479, at *7 (releasing the petitioner subject to reasonable conditions of supervision); *W.T.M.*, 2026 WL 262583, at *4 (same); *Garcia*, 817 F. Supp. 3d at 124 (same); *Miri*, 2026 WL 622302, at *5–7 (same); *Zheng v. Rokosky*, --- F. Supp. 3d ---, 2026 WL 800203, at *11 (D.N.J. March 23, 2026) (same).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Amended Petition (ECF No. 5). Respondents are **ORDERED** to release Petitioner from custody within forty-eight (48) hours under appropriate conditions of supervision set forth in 8 C.F.R. § 241.5.  Within seventy-two (72) hours of this Order, Respondents **SHALL FILE** a status report confirming Petitioner has been released from custody and a copy of the conditions of supervision.  The Court **ORDERS** that Respondents may not re-detain Petitioner without compliance with 8 C.F.R. § 241.4(l)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231.  As this concludes the litigation in this matter, the Clerk **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  May 18, 2026

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

26-CV-1425 JLS (GC)